1  Jason F. Choy (SBN 277583)
   choy@bluepeak.law
2  **BLUE PEAK LAW GROUP LLP**
   3790 El Camino Real, PMB 846
3  Palo Alto, CA 94306
4  Telephone: (213) 647-1228

5

6              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
7

| | |
|---|---|
| In *Re Ex Parte* Application of DAEDALUS PRIME LLC,<br><br>*Applicant*,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in Foreign Proceedings. | Case No.<br><br>**DECLARATION OF DR. FRANK PETERREINS IN SUPPORT OF DAEDALUS PRIME LLC'S *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

I, Frank Peterreins, hereby declare as follows:

1. I am an attorney at law admitted to practice in Germany. I am also qualified as German and European Patent Attorney and have a degree in Mechanical Engineering. I am founding partner of the Munich-based law firm Peterreins Schley. I make this declaration based on my own personal knowledge and based on documents that I have reviewed. If called as a witness, I could and would competently testify to the matters stated herein.

2. I submit this declaration in support of Daedalus Prime LLC's *Ex Parte* Application for an Order Under 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings.

I. **BACKGROUND AND EXPERIENCE**

3. I received a degree in Mechanical Engineering from the Technical University of Munich in 1993, followed by a PhD in Mechanical Engineering from the University of Karlsruhe in 1996. I also hold a JD title awarded from the University of Munich in 1999.

4. I have been an EPO patent examiner and a member of the EPO opposition division from April 1999 – September 2000. Afterwards, I have been with the Munich-based law firm Bardehle Pagenberg from October 2000 – September 2007. From October 2007 – April 2015, I have been managing partner of the Munich office of Fish & Richardson P.C., and in May 2015, I founded the law firm Peterreins Schley. I have been invited several times by the European Patent Office to hold seminars in China and I have held several seminars with the EPO on oral proceedings in opposition matters. Furthermore, I have handled well over 300 opposition cases (Opposition Divisions of the European Patent Office), including opposition appeal proceedings (Boards of Appeal of the European Patent Office); over 70 nullity cases (Federal Patent Court), and over 150 infringement litigation cases (District Court of Mannheim, District Court of Düsseldorf, District Court of Munich, and District Court of Berlin), including appeal

proceedings (Court of Appeal Düsseldorf and Court of Appeal Karlsruhe).

5. I, inter alia, represent Daedalus Prime LLC in connection with German patent litigation, that Daedalus Prime LLC has brought against MediaTek in the District Court of Düsseldorf, in Germany.

## II. BACKGROUND OF THE GERMAN ACTIONS AND THE UPC ACTION

6. On March 14, 2024, Daedalus Prime LLC ("**Daedalus Prime**"), filed an infringement action with the District Court of Düsseldorf in Germany against MediaTek Inc. ("**MediaTek**") and four entities of one of MediaTek's downstream customers, Xiaomi Group (the four Xiaomi defendants are together referred to as "**Xiaomi**"). The infringement action is based on German Patents DE 11 2012 003 701 B4 ("**DE'701**") and DE 11 2012 005 210 B4 ("**DE'210**") (together, the "**Asserted Patents**"), relating to systems and methods embodying certain power allocation and caching functionality in a processor, and is directed against Xiaomi mobile phones of the type "Xiaomi X13T" and "Xiaomi X13T Pro" comprising MediaTek processors of the type "MediaTek Dimensity 8200-Ultra" and "MediaTek Dimensity 9200+", respectively ("**Accused Instrumentality**").

7. Daedalus Prime requests the District Court of Düsseldorf to order MediaTek and Xiaomi to (i) refrain from offering, distributing, using, and/or importing or possessing for those purposes the Accused Instrumentality in Germany, (ii) recall and destroy the Accused Instrumentality, (iii) provide sales information about the distribution chain, (iv) render accounts for all allegedly infringing acts since November 25, 2018 and (v) find that MediaTek and Xiaomi are liable for damages and the costs of the proceedings.

8. By order of April 19, 2024, the District Court of Düsseldorf separated the infringement case into two infringement proceedings, bearing case numbers 4b O 16/24 (regarding DE'701) and 4b O 21/24 (regarding DE'210) (together the "**German Proceedings**").

9. On April 9, 2024, Daedalus Prime filed an infringement action with the Unified Patent Court ("**UPC**") in Hamburg, Germany against MediaTek and four members of MediaTek's customer, the Xiaomi Group (docket no. ACT_19012/2024_UPC_CFI_169/2024). The infringement action is based on a third Daedalus Prime patent, EP 2 792 100 B1 ("**EP'100**") (the "**UPC Asserted Patent**") (the "**UPC Action**") relating to systems and methods for cryptographic (i.e. encrypted) communication of computing devices (in particular smartphones communicating with a remote server) over an untrusted network (such as the internet), and is directed against the same Accused Instrumentalities at issue in the German Actions.

10. Daedalus Prime requests that the UPC order MediaTek and Xiaomi to cease-and-desist offering and distributing the infringing embodiments, to provide an accounting, and to recall and destroy the infringing embodiments. Daedalus Prime further seeks a declaratory decision on damages liability.

11. Xiaomi responded to Daedalus Prime's UPC complaint on July 26, 2024, arguing that the MediaTek chips inside its accused phones allegedly do not infringe EP'100, and asserting that the accused MediaTek chips do not implement certain components of the MediaTek specification cited as a basis for infringement in Daedalus Prime's complaint. Notably, however, Xiaomi's response does not explain in detail how the accused cryptographic functionality in the MediaTek chips actually functions, and neither Xiaomi nor MediaTek has produced documents to Daedalus Prime demonstrating how the accused cryptographic functionality in MediaTek's chips functions.

12. Daedalus Prime's reply in support of its claims for infringement and damages in the UPC is due on September 27, 2024.

### III. SECTION 1782 APPLICATION

13. Daedalus Prime seeks discovery through its § 1782 Application. The discovery

will materially assist the District Court of Düsseldorf and the UPC in adjudicating the disputes between the parties. Daedalus Prime seeks to obtain documents and information regarding the following issues for the German Proceedings and the UPC Action: Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified in the Statement of Claim filed with the Düsseldorf District Court in Germany as a basis for the alleged infringement of the Asserted Patents in the German Actions (the "Accused Features") and the same types of documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified in the Complaint filed with the UPC as a basis for the alleged infringement of EP 2 792 100 B1 in the UPC Action (the "UPC Accused Feature"). In addition, Daedalus Prime seeks to obtain license agreements related to the accused features of the accused instrumentalities or any other products or technologies with the same or materially similar accused features.

14. Germany is a civil law country where the concept of discovery and/or document production does not exist under procedural law, unlike in the U.S. system under common law. In addition, under German law, German courts do not have authority to compel a foreign national residing and/or located outside Germany to appear in a German court to provide testimony. Likewise, the UPC does not have procedures that allow for the types of discovery and/or document production available under U.S. law and does not have the authority to compel a foreign national residing and/or located outside the UPC Contracting Member States to appear in the UPC to provide testimony.

15. Thus, neither German courts nor the UPC can compel Xiaomi and MediaTek to produce the documents identified in Daedalus Prime's proposed discovery requests, even though those documents are directly relevant and material to the infringement issues raised in the

German Proceedings and the UPC Action. German Courts can only request the submission of documents specifically identified or referred to by a party to the German Proceedings, and do not have the authority to investigate, or to order the investigation of facts or documents not already specified by the parties to the action. The same applies for UPC proceedings.

16.  While the German courts and the UPC cannot order the requested discovery, they will nevertheless be generally receptive to evidence obtained through § 1782 proceedings in the United States. Under German law, any documents obtained in a U.S. Application pursuant to 28 U.S.C. § 1782 can be formally introduced into the German Proceedings. According to the overall evidentiary principle of presentation in accordance with sec. 284 et seq. of the Code of Civil Procedure, German courts will take into consideration all evidence introduced by the parties unless the admission of such evidence contravenes a legal prohibition to use such evidence ("*Beweisverwertungsverbot*" in German), and I am not aware of any legal prohibition that would apply to the discovery sought by Daedalus Prime's proposed discovery requests. To the contrary, due to the constitutional right of access to the courts according to Art. 103 paragraph 1 of the German Basic Law ("*Grundgesetz*" in German), and the obligation to investigate the facts of the case to the extent possible (and necessary) according to sec. 286 paragraph 1 of the German Code of Civil Procedure, German courts generally have to take into consideration all evidence submitted into the proceedings (*e.g.*, Federal Supreme Court, decision of June 19, 2002, NJOZ, 2002, 2019 *et seq.*).

17.  While discovery proceedings under 28 U.S.C. § 1782 for use in German patent disputes occur from time to time, to the best of my knowledge, there is no German Federal Supreme Court decision addressing the issue of § 1782 discovery specifically. However, the Federal Supreme Court has confirmed that the enforcement of a U.S. judgment in Germany is not precluded solely because it is based on evidence obtained in discovery proceedings in the

United States (Federal Supreme Court, decision of June 4, 1992, NJW 1992, 3096, 3099, holding that the reliance on evidence obtained through discovery does not violate German public order). This holding has been interpreted in German legal literature as supporting the submission of evidence obtained under § 1782 discovery proceedings. Once submitted in the German Proceedings, the court will then consider the documents or testimony (*see, e.g.*, Schönknecht, "*Beweisbeschaffung in den USA zur Verwendung in deutschen Verfahren*," GRURInt 2011, 1000, 1007 with reference to Eschenfelder, "*Verwertbarkeit von Discovery-Ergebnissen in deutschen Zivilverfahren*," RIW 2006, 443, 447; *see also* Müller-Stoy, "*Grundzüge des U.S.-amerikanischen Patentverletzungsverfahrens*," GRURInt 2005, 558, 563). Furthermore, there is no law, rule of evidence, or rule of procedure in the German Proceedings that prohibits a party from seeking discovery pursuant to § 1782, and then using any evidence obtained through such § 1782 application in German court proceedings.

18. The German courts would thus accept documents obtained under § 1782 discovery proceedings as legitimate evidence in German court proceedings. The same applies to any transcript of sworn testimony given under oath, such as a U.S. deposition of the type requested. As the German courts would accept the formal introduction of the requested documents and testimony by offer of proof, the ordering of such discovery by a court in the United States would not offend the German courts or violate any order of such courts.

19. Honorable Judge Dr. Thomas Kühnen, who was Presiding Judge with the Higher Regional Court of Düsseldorf until January 2024, even proposes in his book "Handbook of Patent Infringement" ("Handbuch der Patentverletzung", 14th Edition, 2022, pages 337 to 339) to make use of discovery proceedings under 28 U.S.C. § 1782 for use in German patent disputes.

20. Likewise, the UPC would be receptive to evidence obtained pursuant to Section 1782 and will consider such evidence. The UPC is a pan-European patent court, with its

Hamburg Local Division (where Daedalus Prime's infringement action against Xiaomi and MediaTek is pending) being presided over by a German Presiding Judge who was previously Presiding Judge at the Düsseldorf District Court. In this Presiding Judge's practice, it was customary to consider foreign decisions - particularly from the United States - and to familiarize oneself with their content. It can therefore be expected that the UPC will consider evidence obtained through U.S. discovery - in particular due to the experience of the German judges working there, whose practice is to consider such evidence. In other words, it is within the Court's discretion to decide how evidence should be considered, and thus the Court can also decide what weight evidence from a U.S. discovery should ultimately have. It can be assumed that the UPC will attach great importance to such evidence.

21. In order to protect Xiaomi's and MediaTek's interests, German courts have the ability to classify certain information and documents, such as the documents identified in Daedalus Prime's proposed discovery request, as confidential under the German Act on Protecting Business Secrets ("Gesetz zum Schutz von Geschäftsgeheimnissen"). Such classification has an effect similar to a protective order in U.S. litigation. Among other available protections, the District Court of Düsseldorf has the ability to limit access to any documents produced in response to Daedalus Prime's proposed discovery requests to a small number of persons and/or to only outside counsel. Daedalus Prime would be willing to accept an Attorneys' Eyes Only court order for any confidential information produced in response to Daedalus Prime's proposed discovery requests. A violation of a court order protecting confidential information can be penalized by a fine of up to 100,000. EUR (for each violation).

22. Any Xiaomi or MediaTek confidential information could likewise be protected if offered as evidence in the UPC. Upon application by a party, the UPC can designate certain parts of the record confidential and subject to secrecy protection. Any documents or

information so designated must be excluded from inspection by third parties. Only the lawyers and selected employees of the parties have access to information designated confidential by the UPC, and any violation of such protections is punishable by law.

23. The reason why Daedalus Prime seeks to obtain license agreements related to the accused features of the accused instrumentalities or any other products or technologies with the same or materially similar accused features is the following. According to German case law, there are generally three options to calculate damages, namely (1) based on the Infringer's profits, (2) based on a reasonable royalty fee, or (3) based on the Patentee's lost profits caused by the infringement. In practice, options (1) and (2) are used. Option (3) is typically not used, because it is often difficult to prove a clear-cut causality between the infringing acts and the lost profits. Therefore, if Daedalus Prime chooses a damage calculation based on a reasonable royalty fee in the German litigation, the requested license agreements will assist the District Court of Düsseldorf in adjudicating a reasonable royalty fee with regard to the Accused Instrumentality and can use this as a starting point for the damage calculation.

24. License agreements that have already been concluded can provide an indication of the value of the infringing products and thus can also serve as a basis for calculating damages in the UPC.

25. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of August, 2024, in Munich, Germany.

Dr. Frank Peterreins,
German Attorney at law
German Patent Attorney
European Patent Attorney

8   PETERREINS DECL. ISO DAEDALUS PRIME'S *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 RE FOREIGN DISCOVERY