UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAEDALUS PRIME LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MEDIATEK USA INC.,<br><br>　　　　Defendant. | Case No. 24-mc-80208-VKD<br><br>**ORDER DENYING WITHOUT PREJUDICE APPLICATION PURSUANT TO 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

Applicant Daedalus Prime LLC ("Daedalus Prime") applied ex parte for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for source code and deposition testimony on MediaTek USA, Inc. ("MediaTek USA"). Dkt. No. 1.[1] The Court denies the application without prejudice.

## I.    BACKGROUND

According to the application, Daedalus Prime is a Delaware limited liability company with a principal place of business in Bronxville, New York. Dkt. No. 1 at 5. It is the owner of two German patents, DE 11 2012 003 701 B4 ("DE'701") and DE 11 2012 005 210 B4 ("DE'210"), and one European patent, EP 2 792 100 B1 ("EP'100") (collectively, "the asserted patents"). *Id.* at 3. DE'701 is directed to systems and methods for power allocation functionality in processors. *Id.* at 5. DE'10 is directed to caching functionality in processors. *Id.* EP'100 is directed to cryptographic communications over unsecured networks. *Id.*

---

[1] All parties appearing have indicated their consent to magistrate judge jurisdiction. Dkt. Nos. 11, 13.

1     MediaTek, Inc. ("MediaTek-Taiwan") is a Taiwan corporation with a place of business in

2 Taiwan. *Id.* at 6. MediaTek USA is Delaware corporation with its principal place of business in

3 San Jose, California. *Id.* MediaTek-Taiwan is a parent company of MediaTek USA. *Id.*

4     On March 14, 2024, Daedalus Prime filed an action in the Düsseldorf Regional Court in

5 Germany against MediaTek-Taiwan (the parent company) and MediaTek-Taiwan's customer

6 Xiaomi Group ("Xiaomi") asserting infringement of DE'701 and DE'210. *Id.* at 2-3. This action

7 has been separated into two infringement proceedings ("German actions"). *Id.* Daedalus Prime

8 accuses two Xiaomi mobile phones that include certain MediaTek processors of infringing its

9 patents. *Id.* at 2.

10     On April 9, 2024, Daedalus Prime filed an action in the Unified Patent Court ("UPC")

11 against MediaTek-Taiwan and Xiaomi asserting infringement of EP'100 ("UPC action") and

12 accusing the same Xiaomi mobile phones. *Id.* at 3. MediaTek-Taiwan has not been served in the

13 UPC action. *Id.* at 2 n.2. However, Xiaomi has been served, and it responded to the UPC

14 complaint by asserting that the MediaTek chips used in the accused mobile phones do not

15 implement certain components that Daedalus Prime cites as a basis for infringement. *Id.* at 3.

16     In aid of the German actions and the UPC action, Daedalus Prime filed an ex parte

17 application asking the Court to issue a subpoena to MediaTek USA for three categories of

18 documents and testimony: (1) technical documentation regarding the functionality of the

19 instrumentalities accused of infringing the asserted patents; (2) licenses relating to the features at

20 issue in the accused instrumentalities; and (3) information about MediaTek USA's ability to

21 access technical documentation about the accused instrumentalities. *See* Dkt. No. 1 at 6.

22 Specifically, Daedalus Prime's proposed subpoena asks for the following documents:

23
1. Source code, specifications, schematics, flow charts, artwork, formulas,
other documentation sufficient to show the operation of any aspects or
elements of an Accused Instrumentality identified in the Statement of
Claim filed with the Düsseldorf Regional Court in Germany as a basis for
the alleged infringement of the Asserted Patents in the German Actions
(the "Accused Features"), including but not limited to power allocation
and caching functionality in the MediaTek Dimensity 8200-Ultra and
Dimensity 9200+.

2. Source code, specifications, schematics, flow charts, artwork, formulas,

      or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified in the Complaint filed with the Unified Patent Court as a basis for the alleged infringement of EP 2 792 100 B1 in the UPC Action (the "UPC Accused Feature"), including but not limited to the cryptographic module(s) in the MediaTek Dimensity 8200-Ultra and Dimensity 9200+ or identified in the Statement of Defence and Counterclaim for Revocation filed by Xiaomi Technology Netherlands B.V. and Xiaomi Technology Germany GmbH in the UPC Action.

3. All patent license agreements Related To the Accused Features or the UPC Accused Feature of the Accused Instrumentalities or any other products or technologies with the same or materially similar Accused Features or UPC Accused Feature.

4. All documents and communications related to the ability and/or legal right of any U.S. and/or internationally-based MediaTek entity to access or obtain the categories of documents sought by Daedalus Prime's subpoena to MediaTek from any other MediaTek entity.

Dkt. No. 1-2. Daedalus Prime's proposed subpoena also asks for deposition testimony on the following topics:

1. The documents and other materials produced in response to Daedalus Prime LLC's document subpoena.

2. The documents and other materials sought by Daedalus Prime LLC's document subpoena and Your efforts to collect and produce such documents and other materials.

3. The design, structure, configuration, and operation of the power allocation and caching functionality and the cryptographic module(s) in the Accused Instrumentalities, including but not limited to the MediaTek Dimensity 8200-Ultra and Dimensity 9200+.

4. The ability and/or legal right of any U.S. and/or internationally-based MediaTek entity to access or obtain the categories of documents sought by Daedalus Prime's subpoena to MediaTek from any other MediaTek entity.

5. The manner, means, methods, or devices by which MediaTek entities and their employees communicate with each other.

6. The manner, means, methods, or devices by which MediaTek entities and their employees communicate when working with and managing multi-site and multi-cultural teams both in the U.S. and internationally.

7. Access to databases maintained by any MediaTek entities by any other MediaTek entity and its employees.

8. Any and all means by which any MediaTek entity and its employees may access or obtain information regarding the Accused Instrumentalities.

9. Any and all methods or means by which MediaTek USA and its

       employees or any other MediaTek entity and its employees may access the categories of documents sought by Daedalus Prime's subpoena to MediaTek.

10. The location(s) of all documents sought by Daedalus Prime LLC in its subpoena to MediaTek and any local or central repository for backup or storage of communications among MediaTek entities.

11. The practical ability and/or legal right of employees of MediaTek entities working from the facilities of MediaTek USA to access servers and/or file, and/or to request files regarding design, structure, configuration, and operation of the power allocation and caching functionality and the cryptographic module(s) in the Accused Instrumentalities, including but not limited to the MediaTek Dimensity 8200-Ultra and Dimensity 9200+.

Dkt. No. 1-3.

The subpoena defines "MediaTek" and "MediaTek USA" to mean: "MediaTek USA Inc., its predecessors-in-interest, parents, subsidiaries, joint ventures, affiliates (including MediaTek Inc., MediaTek North America Inc., MTK Wireless Limited (UK), Gaintech Co. Limited, MediaTek Investment Singapore Pte.), and other legal entities that are wholly or partially owned or controlled by MediaTek USA Inc., either directly or indirectly, and the principals, directors, officers, owners, members, representatives, employees, agents, consultants, accountants, and attorneys thereof." Dkt. Nos. 1-2, 1-3.

Because the Court lacks the authority to act on the application without the complete consent of all parties, the Court directed Daedalus Prime to serve the application on MediaTek USA and set a deadline for MediaTek USA's response. Dkt. No. 4. MediaTek USA filed a response to the application indicating it objects to issuance of the subpoena on several grounds. Dkt. No. 8.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute has three requirements: (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or

4

an "interested person." *Intel*, 542 U.S. at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted. *Id.* at 264. In exercising that discretion, the court considers several factors:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264-65.

A district court's discretion is guided by the twin aims of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts. *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004). The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261-63.

Unless the district court orders otherwise, the discovery authorized by the court must be obtained in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994).

## III.  DISCUSSION

### A.  Statutory Requirements

Daedalus Prime's application satisfies the statutory requirements of 28 U.S.C. § 1782(a). First, the subpoena seeks discovery from MediaTek USA, which has its principal place of business

5

in the Northern District of California. Dkt. No. 1 at 1, 6. Second, Daedalus Prime requests this discovery for use in pending patent infringement actions in Germany. *Id.* at 1, 3-5, 6. Third, Daedalus Prime, as the plaintiff in the foreign patent infringement actions, is an interested person within the meaning of the statute. *Id.* at 6.

### B.     *Intel* Factors

Even if the Court has the authority to grant Daedalus Prime's § 1782 application, that does not mean the Court is required to do so. *Intel*, 542 U.S. at 247. In determining whether judicial assistance under § 1782 is appropriate, the Court must consider the additional, non-exhaustive *Intel* factors.

#### 1.     Participation of target in the foreign proceeding

This factor addresses whether the discovery material is obtainable through the foreign proceeding, without resort to § 1782. *In re: Ex Parte Application Varian Med. Sys. Int'l AG, Applicant*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016). As the Supreme Court has observed:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264.

MediaTek USA is not party to the German actions or to the UPC action; those actions were brought against MediaTek-Taiwan, its parent company, and MediaTek-Taiwan's customer Xiaomi. However, as MediaTek USA observes, Daedalus Prime's proposed subpoena is drafted to encompass documents and information in the possession of MediaTek-Taiwan. Dkt. Nos. 1-2, 1-3. Thus, the subpoena could be construed as seeking discovery in the possession of an entity that is a party to both the German actions and the UPC action.

In any event, Daedalus Prime contends, and MediaTek USA does not dispute, that the

Düsseldorf Regional Court lacks the authority to compel the discovery Daedalus Prime seeks from MediaTek-Taiwan or MediaTek USA. *See* Dkt. No. 1 at 12; Dkt. No. 1-4 ¶ 14; *see generally* Dkt. No. 8.

The parties disagree, however, regarding whether the UPC permits a party to request the discovery Daedalus Prime seeks in the UPC action and whether that Court has authority to compel production. MediaTek USA argues that UPC provides means for obtaining evidence from parties to an action. Dkt. No. 8 at 4 (citing Agreement on a Unified Patent Court ("UPC Agreement," 2013 O.J. (C 175) 1)[2] and the Rules of Procedure of the Unified Patent Court ("UPC Rules of Procedure")[3]). Daedalus Prime responds that because MediaTek-Taiwan has not yet been served, Daedalus Prime cannot obtain any discovery from it in the UPC action. Dkt. No. 16 at 6-7; Dkt. No. 16-1 ¶ 12; *see also* Dkt. No. 1-4 ¶ 15 (declaration of German counsel stating "neither German courts nor the UPC can compel Xiaomi and MediaTek to produce the documents identified in Daedalus Prime's proposed discovery requests, even though those documents are directly relevant and material to the infringement issues raised in the German Proceedings and the UPC Action."). Daedalus Prime does not indicate whether it has requested from Xiaomi the technical documentation it says it requires respond to Xiaomi's non-infringement positions in the UPC action; it states merely says that "neither Xiaomi nor MediaTek has provided discovery into those details." Dkt. No. 16 at 2, 6-7.

The Court has reviewed Articles 53, 59 and 60 of the UPC Agreement and Rules 170-173 and 190 of the UPC Rules of Procedure. Those provisions suggest there are several available means for obtaining evidence from parties and from non-parties, including the following provision for a court order compelling production:

> Where a party has presented reasonably available and plausible evidence in support of its claims and has, in substantiating those

---

[2] https://www.unified-patent-court.org/sites/default/files/upc_documents/agreement-on-a-unified-patent-court.pdf

[3] https://www.unified-patent-court.org/sites/default/files/upc_documents/rop_en_25_july_2022_final_consolidated_published_on_website.pdf

7

> claims, specified evidence which lies in the control of the other party or a third party, the Court may on a reasoned request by the party specifying such evidence, order that other party or third party to produce such evidence. For the protection of confidential information the Court may order that the evidence be disclosed to certain named persons only and be subject to appropriate terms of non-disclosure.

Rule 190(1), UPC Rules of Procedure. Neither party has cited any legal authority to the contrary. The Court has carefully considered the declaration of German counsel in the UPC action, on which Daedalus Prime relies for its assertion that the evidence it seeks is not available in the UPC action. *See* Dkt. No. 16 at 7 (citing Dkt. No. 16-1 ¶ 12). However, Daedalus Prime's German counsel says only that MediaTek-Taiwan is not currently subject to UPC evidence-gathering procedures as a *party* because it has not been served. Dkt. No. 16-1 ¶ 12. As to UPC evidence-gathering procedures more generally, he states:

> [T]he procedural options in the UPC to obtain evidence in another's hand are not comparable to US style discovery in scope, breadth and duration. Under the UPC regime pursuant to R. 190 RoP, evidence from third parties can only be obtained with respect to very specific documents that must be precisely designated, and the requesting party must present reasonably available evidence sufficient to support its claims in advance. Granting a respective request is in the discretion of the court. Thus, the UPC's inquisitorial system does not provide counsel with the same opportunities as the US system.

*Id.* However, the fact that the options for evidence-gathering in the UPC are not the same as U.S.-style discovery does not address the question of whether the key information Daedalus Prime requires—i.e. technical information that will allow it to support its own infringement claims and to test or rebut Xiaomi's non-infringement positions—is available using the rules and procedures available in the UPC action.[4]

Having consider the parties' respective submissions on this point, the Court concludes that Daedalus Prime has shown that the information it seeks is not available in the German actions, but

---

[4] Daedalus Prime asserts that Xiaomi is unlikely to have the information it requires, but Xiaomi is the party asserting non-infringement positions to which Daedalus Prime must respond. Presumably, Xiaomi has some information supporting those positions that it can be required to divulge. It appears that Daedalus Prime has not even asked for this information.

1     it has not shown that at least the technical documentation it seeks is unavailable in the UPC action.
2     For this reason, this factor weighs in favor of granting the application with respect to the German
3     actions but weighs against granting the application with respect to the UPC action.

### 2. Receptivity of foreign tribunal to U.S. judicial assistance

Under this factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4. "In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *Id.* (internal quotations omitted). However, "if there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *Id.* (internal quotations and citations omitted). Courts have denied requests for discovery where the foreign tribunal or government expressly says it does not want the U.S. federal court's assistance under § 1782. *See, e.g.*, *Schmitz*, 376 F.3d at 84-85 (affirming the denial of discovery where the German government expressly objected to the information sought due to concerns that it would jeopardize an ongoing German criminal investigation, as well as German sovereign rights); *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040-41 (N.D. Cal. 2016) (concluding that this *Intel* factor weighed heavily against discovery where the Korean Fair Trade Commission filed an amicus brief stating that it had no need or use for the requested discovery).

Daedalus Prime argues that there is broad agreement that German courts are generally receptive to information obtain through U.S. discovery proceedings, and that the Düsseldorf Regional Court presiding over the German actions would be receptive to such evidence. Dkt. No. 1 at 12-13. MediaTek USA does not contend otherwise. *See* Dkt. No. 8 at 5.

By contrast, it is presently unclear whether the UPC will be receptive to U.S. discovery. As MediaTek USA observes, the UPC is a new entity and there are as yet no data points indicating

1  whether or under what circumstances the UPC would be receptive to information obtain by means
2  of a § 1782 application or from a source other than an UPC member jurisdiction. Dkt. No. 8 at 5.
3  Daedalus Prime does not address this issue in its application, and its reply to MediaTek USA's
4  argument appears to acknowledge the lack of information on this point. *See* Dkt. No. 1 at 12-13;
5  Dkt. No. 16 at 7-8.

As there is consensus that the German court would be receptive to information obtained using U.S. discovery procedures, and no reliable evidence indicating that the UPC would not be receptive to such information, this factor weighs in favor of granting the application. *See In re Volkswagen AG,* No. 24-MC-0832 (JS), 2024 WL 1556912, at *2 (E.D.N.Y. Apr. 10, 2024) (granting § 1782 application for discovery for use in UPC proceeding, and observing "the Court has no reason to believe the UPC will not be receptive to receiving evidence obtained via a United States proceeding").

### 3. Circumvention of proof-gathering restrictions

Under this factor, the Court considers whether Daedalus Prime's proposed subpoena "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "'A perception that an applicant has "side-stepped" less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'" *In re Varian Med. Sys.*, 2014 WL 1161568, at *5 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)). Conversely, courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014); *see also In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018) (finding that the third *Intel* factor weighed in favor of discovery where there was "no evidence" of an attempt to circumvent foreign proof-gathering restrictions or policies).

Daedalus Prime asserts that German law imposes no specific restrictions that would prohibit the discovery it seeks here, and that there are no other policies or legal prohibitions that

10

1  would limit the gathering of such evidence.  Dkt. No. 1 at 13; *see* Dkt. No. 1-4 ¶¶ 16-19.
2  MediaTek USA does not contend otherwise.  Dkt. No. 8 at 5-6.
3        Daedalus Prime's application does not address whether its proposed subpoena represents
4  an effort to circumvent proof-gathering restrictions of the UPC.  *See* Dkt. No. 1 at 14 (discussing
5  only German courts).  MediaTek USA argues that because the UPC provides several means for
6  obtaining evidence from both parties and non-parties, Daedalus Prime's attempt to obtain
7  discovery from Media Tek USA and MediaTek-Taiwan via a § 1782 application strongly suggests
8  that Daedalus Prime "seeks to circumvent those proceedings."  Dkt. No. 8 at 5.  But the question is
9  not whether evidence-gathering procedures are available in the foreign forum.  A district court's
10 authority to order production is not limited to "materials that could be discovered in the foreign
11 jurisdiction if the materials were located there."  *Intel*, 542 U.S. at 260.  Rather, the third *Intel*
12 factor requires a court to consider whether § 1782 discovery may circumvent the foreign forum's
13 *restrictions* on evidence-gathering.  *See, e.g., Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
14 27 F.4th 136, 153 (2d Cir. 2022) ("[W]e have cautioned that courts should not give undue weight
15 to the mere absence in foreign jurisdictions of proof-gathering *mechanisms* available in the United
16 States, for '[p]roof-gathering restrictions' are best understood as rules akin to privileges that
17 *prohibit* the acquisition or use of certain materials, rather than as rules that fail to *facilitate*
18 investigation of claims by empowering parties to require their adversarial and non-party witnesses
19 to provide information.") (internal quotations omitted).  MediaTek USA has not shown that the
20 discovery sought via the proposed subpoena would contravene any such restrictions.
21       As the parties appear to agree that the proposed subpoena does not circumvent proof-
22 gathering restrictions or policies of the German court, and as neither party has shown that it would
23 circumvent proof-gathering restrictions of the UPC, this factor weighs in favor of granting
24 Daedalus Prime's application.

          **4.**    **Unduly burdensome or intrusive discovery**

26       Under this factor, the Court considers whether the discovery sought is "unduly intrusive or
27 burdensome."  *Intel*, 542 U.S. at 265.
28       Daedalus Prime's proposed subpoena to MediaTek USA seeks technical documentation

11

regarding the functionality of the instrumentalities accused of infringing the asserted patents, including source code; licenses relating to the features at issue in the accused instrumentalities; and documents relating to MediaTek USA's ability to access technical documentation about the accused instrumentalities. The proposed subpoena seeks deposition testimony about these same subjects, in addition to testimony about MediaTek USA's collection and production of responsive documents.

MediaTek USA contends that the application seeks discovery that is unduly intrusive, burdensome, and otherwise improper.

*First*, MediaTek USA argues that Daedalus Prime's proposed subpoena is directed to discovery of MediaTek-Taiwan and documents in its possession, both of which are located outside of the United States. Dkt. No. 8 at 6-7. In response, Daedalus Prime disavows any effort to obtain discovery of MediaTek-Taiwan. Dkt. No. 16 at 10. However, it argues that § 1782 "allows extraterritorial discovery" so long as the documents are within MediaTek USA's possession, custody, or control. *Id.* at 10.

Having examined the proposed subpoena, the Court agrees with MediaTek USA that the subpoena literally encompasses material within the possession, custody, or control of entities other than MediaTek USA, including MediaTek-Taiwan and all other "predecessors-in-interest, parents, subsidiaries, joint ventures, [and] affiliates." Dkt. No. 1-2 at 5 (first definition). If, as Daedalus Prime contends, it seeks discovery only from MediaTek USA (i.e. a domestic entity), then it may not serve a subpoena that seeks discovery from other entities by virtue of this expansive definition.

The Court is not persuaded that the proposed subpoena is deficient merely because it may encompass documents physically located outside the United States. The Ninth Circuit has not decided whether an applicant may obtain discovery of such materials. *See Four Pillars Enterprises Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002). The Second and Eleventh Circuits, which are the only two circuits that have considered the question of extraterritorial application, have concluded that "a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad," although it may "consider the location of documents and other evidence when deciding whether to exercise its discretion to

12

1  authorize such discovery." *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019); *see Sergeeva v.*
2  *Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (same conclusion); *but see* Hans Smit,
3  *American Assistance to Litigation in Foreign and International Tribunals: Section 1728 of Title*
4  *28 of the U.S.C. Revisited,* 25 Syracuse J. Int'l L. & Com. 1, 10-12 (1998) (explaining that § 1782
5  was not intended to provide "a statutory basis for production of evidence located abroad" and
6  describing several reasons why the statute should not be interpreted to provide authority for such
7  discovery). Applying ordinary discovery principles under Rules 26 and 45, a subpoena to
8  MediaTek USA may properly seek documents and testimony within MediaTek USA's possession,
9  custody, or control. *See* Fed. R Civ. P. 26(b), Rule 45(a)(1(A)(iii). The concepts of "possession,"
10 "custody," and "control" are well-established in the Ninth Circuit. *See, e.g., In re: Social Media*
11 *Adolescent Addiction/Personal Injury Products Liability Litig.*, No. 22-MD-03047-YGR (PHK),
12 2024 WL 4125618, at *3 (N.D. Cal. Sept. 6, 2024) (discussing authority); *Illumina Cambridge*
13 *Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO (TSH), 2020 WL 820327, at *8-*10
14 (N.D. Cal. Feb. 19, 2020) (same). Thus, if MediaTek USA has possession, *or* custody, *or* control
15 of the documents described in the proposed subpoena, it can be required to produce that material,
16 regardless of where those documents are physically located.

17 *Second*, MediaTek USA argues that Daedalus Prime's proposed subpoena seeks
18 documents and deposition testimony about matters that are not relevant to issues in the German
19 actions or the UPC action—specifically, (1) licenses, (2) efforts to collect and produce documents
20 responsive the proposed subpoena, and (3) the relationship and availability of documents between
21 different MediaTek entities. Dkt. No. 8 at 7-8. MediaTek USA does not object that the requests for
22 technical documents and information are irrelevant.

23 Daedalus Prime has adequately demonstrated that the technical documents (Document
24 Requests Nos. 1 and 2) and license agreements (Document Request No. 3) it seeks, together with
25 related deposition testimony, are relevant to claims or defenses raised in either the German actions, the
26 UPC action, or both. The Court has no reason to believe that the production of these documents and
27 testimony would be unduly burdensome, assuming the documents and information are in MediaTek
28 USA's possession, custody, or control. However, the Court agrees that Daedalus Prime has not shown

that discovery regarding MediaTek USA's efforts to collect and produce responsive documents, the availability of those documents to MediaTek USA, or the relationship between MediaTek entities are relevant to any matter at issue in the German actions or the UPC action. To the extent that Daedalus Prime seeks this information out of concern that MediaTek USA may object that responsive technical documents and/or licenses are not within its possession, custody, or control, the discovery it seeks on this point is premature. In responding to Daedalus Prime's application here, MediaTek USA has not taken the position that responsive technical documentation and license agreements are not in its possession, custody, or control, and the Court has no reason to expect that it will do so without justification.[5] To require MediaTek USA to provide documents and information regarding these matters before an appropriate subpoena is served, and before MediaTek USA has responded, would be unduly intrusive and burdensome.

*Third,* MediaTek USA argues that Daedalus Prime's application should not be granted because Daedalus Prime filed its application "in retaliation" for MediaTek's own efforts to obtain discovery by means of a § 1782 application. Dkt. No. 8 at 8. The Court is not persuaded that Daedalus Prime's application is retaliatory; rather, Daedalus Prime principally refers to MediaTek's own applications, and the assertions made in support of those applications, in an effort to show that the parties agree on matters that Daedalus Prime believes also support its own application. *See, e.g.,* Dkt. No. 1 at 4, 13, 14. In any event, the Court has evaluated the application on its merits, as *Intel* requires.

Accordingly, this factor favors denying the application to the extent the proposed subpoena is directed to an entity other that MediaTek USA and encompasses subject matter beyond the documents and information Daedalus Prime seeks in Document Requests Nos. 1-3 and related deposition topics.

## IV.    CONCLUSION

Daedalus Prime's application meets the statutory criteria for an order authorizing service of the proposed subpoena. However, the factors that inform the Court's exercise of its discretion under *Intel* do not favor authorizing service of the subpoena as presently drafted. For these

---

[5] Daedalus Prime cites to positions MediaTek USA has taken in other matters, but these positions appear to have been taken in matters filed more than eight years ago. *See* Dkt. No. 1 at 10.

reasons, the Court denies the application without prejudice to Daedalus Prime re-filing an amended application with a revised subpoena that addresses the issues identified in this order.

**IT IS SO ORDERED.**

Dated: September 16, 2024

Virginia K. DeMarchi
United States Magistrate Judge

15